# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

EDWIN ASEBEDO,                              )
                                            )
                Plaintiff,      )
                                            )
      vs.                                 )          Case No. 12-CV-1373-EFM-KMH
                                            )
KANSAS STATE UNIVERSITY,                    )
                                            )
              Defendant.      )
_____ )

## MEMORANDUM IN SUPPORT OF KANSAS STATE UNIVERSITY'S
## MOTION TO DISMISS OR FOR JUDGMENT ON THE PLEADINGS

### *Nature of the Matter*

In October 2010, Edwin (a.k.a. "Ed") Asebedo, currently employed in Central Mail Services for Kansas State University ("KSU"), complained to KSU's Office of Affirmative Action about conduct by his supervisor, Tom Filippino, and by a couple of his mailroom coworkers. Pursuant to University Policy, KSU investigated Ed's complaints and took action, including action against Mr. Filippino. The Office of Affirmative Action warned against retaliation against Ed; Ed signed an agreement to report any retaliation to KSU.

In July 2011, a KSU police officer swerved in Ed's direction, apparently in a misguided attempt to "say hi." After this incident, without contacting his supervisors, Ed abandoned his job and his mail truck, leaving the keys in the ignition. Ed received a "written reminder" that this was not appropriate. The written reminder did not go into Ed's official personnel file or affect his pay or benefits.

1

Ed filed this action, complaining that the written reminder, the police officer swerving at him, and an off-handed comment by a former employee constituted "retaliation," for which KSU should be liable under Title VII of the Civil Rights Act. Ed also apparently complains it was retaliation for KSU not to discipline Mr. Filippino more severely after the last complaint. Finally, Ed complains that the fact that his online application was screened out for an Administrative Officer position for failure to meet State-required qualifications in May 2012, was retaliation for the EEOC charge he filed against KSU in February 2012.

In Count I, Ed complains generally of "race discrimination," but identifies no acts of race discrimination.

KSU had previously filed a motion to dismiss.  Ed sought to amend his complaint to add a new claim, which was granted by the U.S. Magistrate Judge.[1]  As per Fed. R. Civ. P. 15(a)(3), KSU was required to respond to the Amended Complaint which it did by Answer.[2]

Because the Complaint as amended is still deficient and to encompass the new claim based upon the screening for the Administrative Officer position, KSU submits this motion to dismiss or, alternatively, motion for judgment on the pleadings.  Both Counts I and II are insufficient to state a plausible claim for relief under Title VII; the Court should dismiss them or grant KSU's motion for judgment on the pleadings on this factually and legally insufficient case as a matter of law.

**Statement of Facts**

Edwin (Ed) Asebedo has been employed by Kansas State University since January of

---

[1] Order (Doc. 16).
[2] Defendant's Answer (Doc. 18).

2007, most recently working in Central Mail Services.[3]  Ed alleges that throughout his

employment, he received good evaluations.[4]  On October 19, 2010, Ed complained to the

University that his then supervisor (Mr. Filippino) and coworkers made racial slurs and

derogatory remarks about Ed and other racial or ethnic groups.[5]  KSU, through the Office of

Affirmative Action, conducted an investigation which "supported Ed's Amended Complaint and

findings were made in his favor and against Mr. Filipino [sic]; [t]he investigation and subsequent

report warned against retaliation against Ed."[6]

The Amended Complaint alleges that "[n]otwithstanding the admonition against

retaliation, Mr. Filipino [sic] and other employees, including Lolita [sic] Sump, pursued a course

of retaliation against Ed.  These actions included threatening behavior by a Kansas State Police

Officer [when] [o]n or about July 20, 2011, the officer swerved his police automobile at Ed while

Ed was walking on campus."[7]  Ed also alleges a former KSU employee threatened him when he

told him to be careful on campus.[8]  Ed immediately left the KSU campus following the alleged

incident with the KSU police officer.[9]

 Ed did not inform his supervisors before he left campus, abandoning his mail truck with

the keys in it.[10]  On or about August 11, 2011, he received a written reminder for leaving campus

without notifying his supervisors, for leaving his mail truck with the keys in the ignition and for

disruptive conduct on the date in question; a copy of the reminder is attached as Exhibit D to

---

[3] Am. Complt. (Doc. 17), at ¶ 5.
[4] *Id.*, at ¶ 6.
[5] *Id.*, at ¶ 8.
[6] *Id.*
[7] *Id.*, at ¶¶ 9-10.
[8] *Id.*, at ¶ 11.
[9] *Id.*, at ¶ 12.
[10] *Id.*, at ¶ 12; Defendant's Answer (Doc. 18); Exhibit D.

KSU's Answer.[11]  Under KSU policy, a written reminder is intended as counseling, not as a punitive measure.[12]  The reminder did not affect Ed's pay or benefits, was not a demotion, and did not even go into his official personnel file.[13]

According to the Amended Complaint, KSU again investigated Ed's allegations and made findings that although Ed had not been subjected to retaliation, Mr. Filippino had violated University Policy.[14] This finding resulted in sanctions to Mr. Filippino, including a one-day "decision-making day," which, under KSU Policy, is considered severe as the employee is advised to take the day to consider whether they want to continue working at KSU and what positive changes they are prepared to make to avoid recurrence of the issue identified.[15]  Ed alleges no improper actions by Mr. Filippino after the second discipline was imposed.

In May 2012, Ed applied for an Administrative Officer position.[16]  His online application was screened out for failure to meet minimum qualifications, which are set by the State of Kansas.[17]  Ed claims this screening was retaliation for a February 2012 EEOC complaint.[18]

## Questions Presented

1. Does the Amended Complaint state a plausible claim for Title VII retaliation where Ed does not allege he suffered adverse action by KSU, the written reminder he received

---

[11] *Id.* Since the Amended Complaint refers to a "disciplinary action," but does not attach it, the document referred to may be considered on a motion to dismiss without converting the matter to summary judgment.  *See GFF Corp. v. Associated Wholesale Grocers,* 130 F.3d 1381, 1385 (10th Cir. 1997); 5B C. Wright & A. Miller, *Federal Practice and Procedure 3d* § 1357, at 375-76 (2004), and 2012 Supp. at 141.
[12] Defendant's Answer (Doc. 18), at ¶ 15.
[13] *Id.*
[14] *Id.*, at ¶¶ 17; 19.
[15] Am. Complt. (Doc. 17), at ¶¶ 15-17; Defendant's Answer (Doc. 18), at ¶ 18.
[16] *Id.*, at ¶ 20.
[17] *Id.*, at ¶ 20; Defendant's Answer (Doc. 18),  at ¶¶ 21-24; Exhibits F1-F4.
[18] Defendant's Answer (Doc. 18), Exhibit F5 (administrative charge regarding screening).

being insufficient as a matter of law and no other adverse action by KSU being alleged?

2.  Does the Amended Complaint state a plausible claim for retaliation, where Ed alleges the fact that he was screened out for the Administrative Officer position in May 2012 was in retaliation for his February 2012 EEOC Complaint?

3.  Does the Amended Complaint plead a plausible claim that KSU discriminated against Ed based upon his race and if so:  (1) was race discrimination the subject of a timely administrative charge with the EEOC; (2) does Ed allege facts sufficient to state a hostile work environment claim; (3) does Ed state a basis for KSU's liability where according to the Amended Complaint, KSU acted whenever Ed complained?

## ARGUMENT AND AUTHORITIES

### Standard for  12(b)(6) Motions to Dismiss or for Judgment on the Pleadings

As recognized by this Court, the Supreme Court in *Ashcroft v. Iqbal*[19] and *Bell Atlantic v. Twombly,*[20] stated  "[t]o survive a motion to dismiss, a Complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'"[21]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[22]  In making these specific factual allegations, a plaintiff must nudge his or her claims from "conceivable to plausible" to survive a motion to dismiss.[23]  If the allegations in the Complaint "are so general

---

[19] 556 U.S. 662 (2009).
[20] 550 U.S. 544 (2007).
[21] *Heublein v. Wefald*, 784 F. Supp. 2d 1186, 1193 (D. Kan. 2011) (citing *Iqbal* and *Twombly*)
[22] *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).
[23] *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012)(citing *Twombly*, 550 U.S. at 570).

that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible."[24]   In making this determination, a court must draw on its judicial experience and common sense.[25]   Although well-pleaded facts in a Complaint are assumed to be true, conclusory allegations need not be considered.[26]   "This pleading requirement serves two purposes:  'to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim.'"[27]

In affirming the district court's order granting a motion to dismiss in a Title VII employment discrimination case, the Tenth Circuit in *Khalik v. United Air Lines* cited *Twombly* and noted that it is incumbent upon a discrimination plaintiff to state **facts** supporting a plausible claim for discrimination or retaliation; conclusory statements are disregarded.[28]   As the Circuit stated it, "[t]here are certain details the Plaintiff should know and could properly plead to satisfy the plausibility requirement," including why he or she believes the employer's stated reasons are pretextual or "connected with discriminatory animus."[29]

Similar to the plaintiff in *Khalik*, Ed's Amended Complaint presents vague, conclusory allegations and legal conclusions entitled to no weight.  In fact, the specific facts do not plausibly support –and at times contradict – the legal conclusions asserted.  This action should be

---

[24] *Id.* (citing *Robbins v. Oklahoma*, 510 F.3d 1242, 1247 (10th Cir. 2008)).
[25] *Heublein*, 784 F. Supp. 2d at 1193.
[26] *Id.*
[27] *Kansas Penn*, 656 F.3d at 1215 (quoting *Pace v. Swerdlow*, 519 F.3d 1067, 1076 (10th Cir. 2008)).
[28] *Khalik v. United Air Lines*, 671 F.3d 188, 1191 (10th Cir. 2012).
[29] *Id.*, at 1194.

dismissed for failure to state a plausible claim for relief or, alternatively, the Court may grant judgment on the pleadings on the facts of record, which are largely uncontested.[30]

### Count II Fails to State a Plausible Retaliation Claim

The Complaint fails to plausibly plead a claim that KSU retaliated against Mr. Asebedo in violation of Title VII because he complained of discrimination.  In relevant part, the statute, 42 U.S.C. § 2000e -3(a) provides:  "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice."  To state a prima facie claim for retaliation under Title VII, Mr. Asebedo "must show:  1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the *materially adverse* action." [31] As this Court stated, "[m]inor or trivial employment actions do not rise to the level of 'adverse actions' and 'not everything that makes an employee unhappy is [  ] actionable.'"[32]

As to the causation element, the Tenth Circuit stated:  "[u]nder our precedent, the requisite causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action. Unless there is a very close temporal proximity between the protected activity and the retaliatory conduct, the

---

[30] Wright & Miller, 5C *Federal Practice and Procedure:  Civil 3d* § 1367, at 207-08 (discussing the utility of a motion under Fed. R. Civ. P. 12(c)).

[31] *Khalik*, at 1193 (quoting *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011)) (emphasis added).

[32] *Boese v. Fort Hays State Univ.*, 814 F. Supp. 2d 1138, 1148 (D. Kan. 2011), *aff'd*, 462 Fed. Appx. 707 (10th Cir. 2012) (quoting *Haynes v. Level  3 Comm'n, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006)).

plaintiff must offer additional evidence to establish causation."[33]  "We have held that a one and one-half month period between the protected activity and adverse action may, by itself, establish causation.  By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation."[34]

"If the plaintiff does not establish a prima facie case, his entire case fails."[35]

Only three specific actions by KSU are complained of in the two administrative charges of discrimination:  (1) the August 3, 2011 written reminder he received after abandoning his mail truck with the keys in it; (2) KSU's denial on or about January 11, 2012, of Ed's appeal of the discipline Mr. Filippino received; and (3) the fact that his online application for the Administrative Officer position was screened out for failure to meet State-required minimum qualifications.  None states a plausible basis for a retaliation claim for reasons including either materially adverse action or causation is lacking.

## A.  The Amended Complaint Fails to State a Plausible Retaliation Claim Based Upon the Screening for the Administrative Officer Position

In May 2012, Ed's online application for an Administrative Officer position was screened out by Dr. Cheryl Grice for failure to meet State minimum qualifications.  Ed believes he was screened out because of his February 2012 EEOC complaint.  Other than his own opinion that he was qualified for the Administrative Officer position, Ed offers no facts to support a claim that

---

[33] *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (internal quotes omitted).
[34] *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (citations omitted); *accord*, *Conroy v. Vilsak*, 707 F.3d 1163, 1181 (10th Cir. 2013) (citing *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1254 (10th Cir. 2001) (quoting *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982))); *Hall v. Interstate Brands Corp.*, No. 08-2073-EFM, 2009 WL 2043570, at *8 (D. Kan. July 13, 2009) (citation omitted), *aff'd*, 395 Fed. Appx. 519 (10th Cir. 2010).
[35] *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012).

this was retaliatory.   The facts alleged are insufficient to support a *prima facie* retaliation claim.

Only KSU Human Resources employee Dr. Cheryl Grice was involved in the screening of Ed's application for the Administrative Officer position.[36]   Ed does not allege that Dr. Grice knew about his EEOC complaint when she conducted the screening.  Under University policy generally, complaints of this nature are confidential, shared on a need-to-know basis.[37]   By memo dated June 20, 2012, Dr. Grice told him the reason he did not pass the screening was that his online application did not show "four years of experience in general office, clerical or administrative support work," a minimum requirement set by the State of Kansas.[38]  Ed has failed to put forward anything, other than his own unsupported opinion, to rebut Dr. Grice's opinion of his qualifications or to set forth a plausible claim that this screening was motivated by retaliation on Dr. Grice's part.

Further, although Ed has not demonstrated that Dr. Grice knew of his February 2012, EEOC complaint, the time period between that complaint and the screening  (which would have occurred sometime between May 16 and June 20, 2012)[39] of three to four months is too long to support causation as a matter of law, particularly in the absence of any evidence that the screening was caused by or in any way related to Ed's EEOC Complaint.[40]

---

[36] Defendant's Answer (Doc. 18), at ¶ 21.
[37] *See, e.g., Id.,*  at Exhibit A.
[38] *See Id.,* at Exhibit F-3, Doc. 18-8; Exhibit F-1, Doc. 18-6; Exhibit F-2, Doc. 18-7, at p. 5.
[39] *See Id.*
[40] *Khalik,* at 1194;  *Boese v. Fort Hays State Univ.,* 814 F. Supp. 2d 1138, 1147-48 (D. Kan. 2011) (no causal connection to support retaliatory failure to hire claim where there was no evidence that interviewing individuals had knowledge of plaintiff's protected activity and where there was a lapse of time between plaintiff's activity and the failure to hire), *aff'd*, 462 Fed. Appx. 707 (10th Cir. 2012); *Hall v. Interstate Brands Corp.*, No. 08-2073-EFM, 2009 WL 2043570, at *8 (D. Kan. July 13, 2009) (citation omitted), *aff'd*, 395 Fed. Appx. 519 (10th Cir. 2010) (three month period too long without additional evidence of causation); *see Meiners v. University of Kansas*, 359 F.3d 1222, 1231 (10th Cir. 2004); *Murdock v. City of Wichita*, 09-CV-02103-EFM, 2012 WL 4210471, at *10 (D. Kan. Sept. 18, 2012) (granting summary judgment to the City on retaliation claim where there was no close temporal

For all these reasons, Ed's claims related to the screening of his application should be dismissed in their entirety or, in the alternative, the Court may enter judgment in Defendant's favor on the pleadings on this claim.

**B.  The Written Reminder  is not "Adverse Action"**

The single vague reference in the Amended Complaint to a "disciplinary action," without any allegation that this materially affected Ed's pay or benefits, is insufficient to constitute materially adverse action. This Court's decision in *Boese v. Fort Hays State University* is instructive in holding that a written warning, more serious than what Ed received, did not constitute adverse action for purposes of a retaliation claim, quoting the Tenth Circuit as stating "[a] written warning may be an adverse employment action only if it effects a significant change in the plaintiff's employment status."[41]  The Court found that the warning in question "was, at best, trivial, and did not affect Plaintiff's employment in any material way." [42] The Tenth Circuit has repeatedly held that a single write-up does not constitute adverse action for purposes of a retaliation claim.[43]

The Amended Complaint does not allege that Ed suffered any loss of pay or benefits or that he was demoted as a result of the August 2011 written reminder.[44]  To the contrary, Ed's

proximity or other evidence to establish a causal relationship between plaintiff's verbal complaint in January 2006 and her discipline on February 22, 2007).

[41] 814 F. Supp. 2d 1138, 1148 (D. Kan. 2011) (quoting *Haynes v. Level 3 Comm'n, LLC*, 456 F.3d 1215, 1224 (10th Cir. 2006)), *aff'd*, 462 Fed. Appx. 707 (10th Cir. 2012).

[42] *Id.*

[43] *Medina v. Income Support Div.*, 413 F.3d 1131, 1137 (10th Cir. 2005) (warning letter did not constitute adverse action); *Dick v. Phone Directories, Inc.*, 397 F.3d 1256, 1270 (10th Cir. 2005). *See also, Cuenca v. University of Kansas*, 265 F. Supp. 2d 1191, 1209 (D. Kan. 2003), *aff'd*, 101 Fed. Appx. 782 (10th Cir. 2004), *cert. denied*, 543 U.S 1089 (2005)(letter of reprimand did not constitute adverse action for purposes of retaliation claim where the letter did not affect a significant change in plaintiff's employment status or benefits but was merely a warning).

[44] Am. Complt. (Doc. 17), at ¶ 14.

Amended Complaint alleges that "throughout his employment, Ed has received good evaluations,"[45] meaning that up to the present day his evaluations were not affected by the written reminder which was intended as a corrective, not a punitive measure, and was not even placed in Ed's official personnel file.[46]

Ed's claims related to his receipt of a written reminder for abandoning his mail truck with the keys in it should be dismissed in their entirety or, in the alternative, the Court may enter judgment in KSU's favor on this claim.

## C.  Ed Alleges No Other "Adverse Action"

Ed complains that Mr. Filippino's discipline for violating University policy was not severe enough.[47]  However, the Amended Complaint does not explain how Ed has standing to complain about another employee's discipline or how the disciplining of another KSU employee constitutes "adverse action" against Ed.

Ed complained to KSU's Office of Affirmative Action about Mr. Filippino.[48] The Office investigated and sanctioned Mr. Filippino both times.[49]  The second time Mr. Filippino was given a "decision-making day" and a written warning in his file that any further violations would be met with discipline up to and including termination of employment.[50]  In terms of KSU's personnel policies, a "decision-making day" is not considered minimal, but rather is a significant sanction for the purpose of the employee in question deciding "whether he or she wishes to

---

[45] *Id.*, at ¶ 6.
[46] Defendant's Answer (Doc. 18), at ¶ 15.
[47] Am. Complt. (Doc. 17), at ¶ 17.
[48] Am. Complt. (Doc. 17), at ¶¶ 8, 15.
[49] *Id.*, at ¶¶ 8, 9, 15, 16, 17.
[50] *Id.*, at ¶ 17, Defendant's Answer (Doc. 18), at ¶ 18.

continue employment with K-State and, if so, what positive steps the employee will take to correct past deficiencies."[51]  Although KSU considered Ed's position on the matter by allowing Ed to seek review of Mr. Filippino's discipline,[52] the denial of Ed's "appeal" does not constitute adverse action as to Ed for purposes of a Title VII claim.  Ed does not plead that Mr. Filippino has done anything to him subsequent to January 11, 2012, when KSU issued the final determination on Ed's appeal.[53]

Ed's Amended Complaint is devoid of reference to any alleged adverse action by the University, the sole defendant herein.

Ed never explains how the misguided single act of the KSU police officer or an offhand comment by the former employee constitute adverse action or can be fairly attributed to the University.  Ed provides no plausible basis for concluding that these incidents had anything to do with his complaint about his co-workers and Mr. Filippino, which was maintained as confidential as per University policy.[54]  Also, given the considerable time lag between October 19, 2010, and the incidents on July 20, 2011 and July 25, 2011, there is no temporal basis for a causal connection between the earlier complaint and these incidents.[55]

---

[51] Defendant's Answer (Doc. 18), at ¶ 18.
[52] Am. Complt. (Doc. 17), at ¶¶ 17-18.
[53] *See* Am. Complt. (Doc. 17)., at ¶18.
[54] Defendant's Answer (Doc. 18), Exhibit A.
[55] *Boese v. Fort Hays State Univ.*, 814 F. Supp. 2d 1138, 1147-48 (D. Kan. 2011) (no causal connection to support retaliatory failure to hire claim where there was no evidence that interviewing individuals had knowledge of plaintiff's protected activity and where there was a lapse of time between plaintiff's activity and the failure to hire), *aff'd*, 462 Fed. Appx. 707 (10th Cir. 2012); *Hall v. Interstate Brands Corp.*, No. 08-2073-EFM, 2009 WL 2043570, at *8 (D. Kan. July 13, 2009) (citation omitted), *aff'd*, 395 Fed. Appx. 519 (10th Cir. 2010); *see Meiners v. University of Kansas*, 359 F.3d 1222, 1231 (10th Cir. 2004); *Murdock v. City of Wichita*, 09-CV-02103-EFM, 2012 WL 4210471, at *10 (D. Kan. Sept. 18, 2012) (granting summary judgment to the City on retaliation claim where there was no close temporal proximity or other evidence to establish a causal relationship between plaintiff's verbal complaint in January 2006 and her discipline on February 22, 2007).

Ed recites that the University warned against retaliation against him. [56] Ed signed an agreement to report any alleged retaliation to KSU. [57]  According to his own Amended Complaint, whenever he reported anything to KSU officials, they investigated and acted. [58]  That is all KSU can do or need do as a matter of law.  There is no basis for liability of KSU on these facts and the law. [59]  For all these reasons, Ed's claims in Count II should be dismissed in their entirety. In the alternative, the Court may enter judgment in KSU's favor on Count II.

### KSU is Entitled to Judgment on Count I

## A.  The Amended Complaint Fails to Plausibly Plead a Race Discrimination Claim

Count I generally alleges that Ed "was subjected to discrimination on account of his race in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e," but does not state what actions by KSU he is claiming are racially discriminatory. [60]  Count I fails to state a plausible discrimination claim as required by Fed. R. Civ. P. 8(a) and *Khalik:*  "[P]laintiff's general assertions of discrimination and retaliation, without any details whatsoever of events leading up to [plaintiff's] termination, are insufficient to survive a motion to dismiss." [61]

To the extent that the Court and adverse counsel are required to "mine" the Amended

---

[56] Am. Complt. (Doc. 17), at ¶ 8.
[57] Defendant's Answer (Doc. 18), at ¶ 9, Exhibit B.
[58] Am. Complt. (Doc. 17), at ¶¶ 8, 15-17.
[59] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 675-79 (10th Cir. 1998) (finding no basis for liability where Wal-Mart acted reasonably in response to employee's complaints); *Helm v. State of Kansas,* 656 F.3d 1277, 1284 (10th Cir. 2011) (an employer is not liable for co-worker or even supervisory harassment, particularly in the absence of tangible employment action where "the employer exercises reasonable care to prevent and correct promptly any harassing behavior and where the plaintiff employee unreasonably fails to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.")(quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998) and *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765 (1998)).
[60] Am. Complt. (Doc. 17), at ¶¶ 25-26.
[61] 671 F.3d 1188, 1193 (10th Cir. 2012).

Complaint to try to find out the basis for the race discrimination claim, the general references to discrimination are conclusory and insufficient.  Count I generally incorporates the prior allegations.[62]  Looking through paragraphs 1-24 to try to discern the factual basis for the race discrimination claim, almost all of the referenced paragraphs refer to alleged retaliation rather than race discrimination.[63] The Amended Complaint fails to adequately plead a race discrimination claim as per *Khalik*.[64]

**B.  Ed Failed to Exhaust Remedies as to a Race Discrimination Claim**

Ed failed to exhaust administrative remedies as to any race discrimination claim. Exhaustion of administrative remedies by filing a timely charge of discrimination is a prerequisite to maintaining a Title VII action.[65]  **Race discrimination** was not the basis for his EEOC charge, Charge no. 563-2012-00724.[66]  Although Ed was represented by counsel when he filed his EEOC charge,[67] the only box checked on the EEOC charge as to the basis for the charge is the box for **"retaliation."** [68] No other box is checked.[69] The written description of the basis for the charge, Exhibit A to the charge, sounds in retaliation.[70]  The first twelve lines of Exhibit A to the charge consist of Ed describing his October 19, 2010, complaint and KSU's actions against Mr. Filippino.[71]  Then, the discussion in Exhibit A shifts into a recitation of an

---

[62] *Id.*, at ¶ 25.
[63] Am. Complt. (Doc. 17), at ¶¶ 9-15, 23.
[64] 671 F.3d 1188 (10th Cir. 2012).
[65] *See, e.g., Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005).
[66] Defendant's Answer (Doc. 18), Exhibit E.
[67] *Id.*
[68] *Id.*, page 1.
[69] *Id.* By contrast, the second EEOC charge checks boxes for "race," "retaliation," and "national origin." Defendant's Answer (Doc. 18), Exhibit F-5.
[70] Defendant's Answer (Doc. 18), Exhibit E, page 2.
[71] *Id.*

alleged "course of retaliation against [Ed]," purporting to give examples thereof.[72]  There are no facts alleged in the charge supporting the allegation that Ed was discriminated against based upon race, which he now describes as "Hispanic," or as he previously self-identified to KSU, as "American Indian" and "Native American."[73]

In *Gunnell v. Utah Valley State College*, the Tenth Circuit held that failure to check a box on a charge, while not dispositive, created a presumption that the claimant is not asserting a claim where the boxes are not checked.[74]  The Circuit found that the plaintiff's references to discrimination in the charge at issue in that case were "merely a prelude, an explanation leading up to the gist of her Amended Complaint of retaliation." [75]

Similarly here, Ed's discussion of his October 19, 2010, complaint to KSU's Office of Affirmative Action appears to be a prelude for his retaliation complaint.[76] The thrust of his EEOC Charge alleged retaliation, not race discrimination.  If Ed is trying to reach back to events forming the basis for his October 2010 complaint to KSU, he cannot, as his February 21, 2012, charge is filed outside the allowable 240-300 day period for such a charge.[77]  Any conduct that was not made the basis of a timely administrative charge is not actionable under Title VII as a matter of law.[78]

Although Ed and his counsel checked the boxes for race discrimination, retaliation and national origin discrimination on the second charge, the subject matter of that charge was limited

---

[72] *Id.*
[73] *Id.*, at page 2; Defendant's Answer (Doc. 18), at ¶ 6.
[74] 152 F.3d 1253, 1260 (10th Cir. 1998).
[75] *Id.*
[76] Am. Complt. (Doc. 17), at ¶¶ 7-9.
[77] 42 U.S.C. § 2000e-5(e); *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 110-11 (1988).
[78] *Daniels v. United Parcel Service, Inc.*, 701 F.3d 620, 628 (10th Cir. 2012); *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005).

to Ed's application being screened out for the Administrative Officer position.[79]   Although the

boxes are checked, the text of that charge refers to retaliation, not race discrimination, as the

alleged reason for the screening.[80]   Similarly, the Amended Complaint refers to the screening as

"an instance of retaliation," not race discrimination.[81]   Ed has failed to exhaust administrative

remedies as to a race discrimination claim, a jurisdictional failure that requires dismissal of

Count I.[82]

## C.   Ed Fails to Plead a Hostile Work Environment Claim

Assuming the vague allegations of Count I are an attempt to state a 'hostile work

environment claim,' and assuming, contrary to fact, that Ed exhausted administrative remedies as

to such a claim, the Amended Complaint fails to allege that Ed experienced conduct so severe or

pervasive as to alter the terms and conditions  of  Ed's employment at KSU.[83]   As this Court

stated, "conduct must be extreme to amount to a change in the terms and conditions of

employment. . . To constitute actionable harassment, the conduct must be sufficiently severe or

pervasive to alter the conditions of the victim's employment and create an abusive working

environment.  Properly applying Title VII standards will filter out complaints attacking the

ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-

related jokes, and occasional teasing."[84]   There is simply nothing in this Amended Complaint

---

[79] Defendant's Answer (Doc. 18), at Exhibit F5.
[80] *Id.*
[81] Am. Complt. (Doc. 17), at ¶ 23.
[82]*Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005).
[83] *Shelby v. Mercy Regional Health Center*, No. 07-4147-EFM (D. Kan. Apr. 21, 2009) (2009 WL 1067309); *see Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)
[84] *Shelby,* at *2 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) and *Bolden v. PRC, Inc.*, 43 F.3d 545, 550-51 (10th Cir. 1994)) (internal quotes omitted).

that meets the high standard for hostile work environment claims as recognized by this Court. Although not clearly alleged in the Amended Complaint, even if one were to make the unsupported assumption that the police officer had a racial motivation in swerving his car at Ed, that single instance would not support a hostile work environment claim and would not provide a basis for holding KSU responsible for this police officer's actions.[85]

## D.   The Amended Complaint Fails to State a Claim Against KSU

An employer "is only obligated to respond to harassment of which it actually knew, or in the exercise of reasonable care should have known.  Actual knowledge will be demonstrable in most cases where the plaintiff has reported harassment to management-level employees."[86]  Ed fails to allege that KSU Officials knew of any discrimination or harassment but failed to act upon it.  To the contrary, the Amended Complaint shows that when Ed complained in October 2010, KSU acted.[87]  Without stating specifics, Ed generally alleges "the harassing behavior from Mr. Filippino" continued, but acknowledges that after his second report to KSU's Office of Affirmative Action, an investigation ensued  and Mr. Filippino was again disciplined.[88]   Ed does not allege that he complained of any further "harassing behavior" by Mr. Filippino after the second disciplinary action.[89]   Therefore, the Amended Complaint fails to plead a basis from which this Court could find that KSU Officials were aware of any discrimination or harassment

---

[85] *Id.*, at *3 (granting a motion to dismiss, finding that the single incident alleged by Plaintiff was insufficient to plausibly state a Title VII discrimination or harassment claim).
[86] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998) (citations omitted).
[87] Am. Complt. (Doc. 17), at ¶ 8.
[88] *Id.*, at ¶¶ 16-18.
[89] *See* Am. Complt. (Doc. 17).

but failed to act reasonably in response.[90]  On this record, there is no basis for imposing any

liability on KSU as it admittedly took action whenever Ed complained.[91]

More recently, the Tenth Circuit held that the State of Kansas had no vicarious liability

for a state district judge's alleged acts of sexual harassment as to an administrative assistant

where the Judicial Branch had a policy prohibiting sexual harassment, including advising

employees where to make reports, and the State acted reasonably in response to the assistant's

complaints when made, applying the *Faragher/Ellerth* defense.[92]   Similarly here, KSU has a

policy against discrimination and harassment,[93] which Ed utilized and which resulted in a

reasonable response by KSU.[94]   The Amended Complaint alleges no "tangible employment

action" by Mr. Filippino against him.[95]  In the absence of tangible employment action by a

supervisor, the employer is not liable where it exercised reasonable care to prevent harassment

and to correct promptly any alleged harassment.[96]  According to the Amended Complaint,  KSU

exercised reasonable care to prevent and  to correct any alleged harassment.[97]   If Ed is now

claiming that there were additional acts of harassment by Mr. Filippino that  Ed did not timely

report, he clearly acted unreasonably, having been aware of KSU's Policy and having effectively

---

[90] *Adler*, at 675-79 (finding that Wal-Mart acted reasonably in response to complaints of harassment, noting that an employer is not an insurer against future "harassment by coworkers after an initial employer response, regardless of the nature of the response taken.  This is liability without end.").
[91] *Id.*; *see also, Helm v. State of Kansas,* 656 F.3d 1277, 1284 (10th Cir. 2011).
[92] *Helm*, 656 F.3d at 1279 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764-65 (1998)).
[93] Defendant's Answer (Doc. 18), at Exhibit A.
[94] Am. Complt. (Doc. 17), at ¶¶ 8, 15-17.
[95] *See, e.g., Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment  with significantly different responsibilities, or a decision causing a significant change of benefits.").
[96] *Helm*, at 1288.
[97] Am. Complt. (Doc. 17), at ¶¶ 8, 15-17.

utilized it before in 2010.[98]  Although *Faragher/Burlington* is generally considered an affirmative defense for the employer to plead and prove, the allegations of the Amended Complaint establish the defense for KSU as Ed fails to plead any tangible employment action against him by Mr. Filippino, and his Complaint sets forth that KSU exercised reasonable care to prevent and correct any alleged harassment that Ed reported to the KSU Office of Affirmative Action.  There is simply no basis for imposing liability on KSU in this matter.[99]

## CONCLUSION

Ed's Complaint, even as amended, consists of vague, conclusory allegations failing to state a plausible claim for discrimination or retaliation against KSU which, by Ed's own admission, has acted promptly and reasonably to investigate and address Ed's concerns, although they did not rise to an actionable level under Title VII.  An employer can do no more.  This action should be dismissed for failure to state a claim or, alternatively, KSU is entitled to judgment on the pleadings.

---

[98] *Helm*, at 1291-92 (assistant acted unreasonably in failing to report judge's alleged sexual harassment); Am. Complt. (Doc. 17), at ¶ 8.
[99] *Adler*, at 675-79; *Helm*, at 1284.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT


s/ M.J. Willoughby
M.J. Willoughby, KS Sup. Ct. No. 14059
Assistant Attorney General
Memorial Bldg., 2nd Floor
120 SW 10th Avenue
Topeka, Kansas 66612-1597
Tel:  (785) 296-2215
Fax:  (785) 291-3767
Email:  MJ. Willoughby@ksag.org
Attorney for Defendant Kansas State University

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 28th  day of March, 2013, I filed a copy of the above and foregoing by means of the CM/ECF system which sent notices to counsel of record, including counsel of record for the Plaintiff, Larry G. Michel and Angela D. Cobel, Kennedy Berkley Yarnevich & Williamson, Chartered, 119 West Iron Avenue, 7th Floor, P.O. Box 2567, Salina, KS 67402-2567 lmichel@kenberk.com and acoble@kenberk.com.


M.J. Willoughby
M.J. Willoughby, Assistant Attorney General

20