## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **EDWIN ASEBEDO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 12-CV-1373-EFM-KGG** |
| | ) | |
| **KANSAS STATE UNIVERSITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

### PRETRIAL ORDER

A pretrial conference was conducted in this case on October 8, 2014, by U.S. Magistrate Judge Kenneth G. Gale. The plaintiff Edwin Asebedo appeared through counsel, Larry G. Michel and Andrea K. Swisher. The defendant Kansas State University appeared through counsel, M.J. Willoughby, Assistant Attorney General for the State of Kansas.

This pretrial order supersedes all pleadings and controls the subsequent course of this case. It will not be modified except by consent of the parties and the court's approval, or by order of the court to prevent manifest injustice. Fed. R. Civ. P. 16(d) & (e); D. Kan. Rule 16.2(c).

### 1.    PRELIMINARY MATTERS.

Defendant disputes subject matter jurisdiction as to any claims of racial discrimination which were not the subject of a timely charge of discrimination with the EEOC. Defendant raised this issue in a timely motion to dismiss the Complaint and again in a timely motion to dismiss the Amended Complaint. The district court did not address the issue, dismissing the action on other

1

grounds.  The appellate court did not address the issue, disposing of the issues on appeal on other grounds.

      **a.**    **Subject Matter Jurisdiction.**  Subject matter jurisdiction is invoked under 28 U.S.C. 1343.  Subject matter jurisdiction is disputed as to any claims which were not timely subject to exhaustion of administrative remedies as required by 42 U.S.C. 2000e.

      **b.**    **Personal Jurisdiction.**  The court's personal jurisdiction over the parties is not disputed.

      **c.**    **Venue.**  Venue in this court is not disputed.

      **d.**    **Governing Law.**  Subject to the court's determination of the law that applies to the case, the parties believe and agree that the substantive issues in this case are governed by the following law: Title VII of the 1964 Civil Rights Act, 42 U.S.C. 2000e.

**2.**    **STIPULATIONS.**

      **a**.    The following facts are stipulated:

      1.    Edwin Asebedo has been employed by Kansas State University since January 2007 and has been employed in Central Mail since February 2009. Asebedo has received satisfactory or "meets expectations" ratings on his job performance while in Central Mail.

      2.    In this action, Mr. Asebedo identifies himself as Hispanic.

      3.    Edwin Asebedo was informed of the Policy Prohibiting Discrimination, Harassment, and Sexual Violence, and Procedure for Reviewing Complaints at Kansas State University.  (Pltf's Response to KSU's RFA # 1)

      4.    Edwin Asebedo reported the incidents he considered to be offensive to the Office of Affirmative Action at Kansas State University.  (Pltf's Response to KSU's RFA # 2).

5.      Specifically, on October 19, 2010, Asebedo filed a complaint alleging that Tom Filippino and certain coworkers made comments he regarded as offensive.

6.      The Office of Affirmative Action at KSU investigated Mr. Asebedo's complaints. (Pltf's Response to KSU's RFA # 3),

7.      In December 2010, the Office of Affirmative Action issued a report with findings on Asebedo's allegations.

8.      While the December 2010 report did not find that any racial slurs had been directed to Mr. Asebedo personally by anyone, the December 2010 Report did find that Tom Filippino had violated university policy by telling true stores with racial elements and telling racial jokes, which he admitted.

9.      The December 2010  Report did not substantiate Asebedo's allegations about any co-worker  using racial slurs.

10.     Based upon its findings, KSU took several actions in response to Mr. Asebedo's complaints, including:  issuing letters of reprimand to Filippino and Loleta Sump and ordering both to attend Respect Training as well as directing each to write a report on their supervisory duties under the Policy on Affirmative Action.  Barb Larson and Russell Thompson were also ordered to attend Respect Training.  No violation was found as to Ed Albrant.

11.     Mr. Asebedo did not appeal from the December 2010 report, its findings and the proposed sanctions.

12.     In July 2011, Asebedo told Pam Foster in the Affirmative Action Office that he had not experienced any further offensive behavior in Central Mail, he was just having a hard time letting it go.  (RFA).

3

13.     Mr. Asebedo did not file another complaint with the Office of Affirmative Action until after an incident occurred with Officer Younkes which he considered retaliation for his earlier complaints as he believed Younkes was friends with Filippino.

14.     In the September 2011 complaints filed with the Office of Affirmative Action, Mr. Asebedo alleged that Mr. Filippino continued to tell racial jokes, mentioning specifically a joke told by Mr. Filippino that the economy was so bad that the cat sold the dog to the Korean restaurant next door.

15.     In December 2011, the Office of Affirmative Action issued its report and findings.  It found no evidence of retaliation.  It found that Tom Filippino had on one occasion repeated a joke he said he heard on Jay Leno, that the economy was so bad that the cat sold the dog to a Korean restaurant next door.

16.     Based on the December 2011 report, a sanction was imposed on Mr. Filippino of a one-day decision-making leave.

17.     Mr. Asebedo appealed the findings in the 2011 report, including the sanction on Mr. Filippino.  A KSU official, Bruce Schubert, affirmed the findings and the proposed discipline on Mr. Filippino.

18.     On February 12, 2012, Asebedo filed a charge of discrimination with the EEOC, charge no. 563-2012-00724 and received a notice of right to sue thereon.

19.     Charge No. 563-2012-00724 is the only charge at issue in this action based on race discrimination.

20.     Mr. Asebedo raised all of his complaints of race discrimination with the Office of Affirmative Action.

21.     The retaliation claims have been dismissed from this action and are no longer at issue.

22.     The dismissed claims of retaliation include the allegations in the Amended Complaint regarding the July 2011 police officer swerving incident and Mr. Asebedo's claims that his application was screened out for an Administrative Officer position in retaliation for his earlier complaints.

23.     From October 19, 2010 to the present, the amount of Edwin Asebedo's paychecks have not been reduced as a result of a disciplinary action.

24.     In December 2010, Kansas State University returned 29.50 hours of sick leave to Edwin Asebedo's leave balance.

25.     In December 2010, Kansas State University returned 25.00 hours of vacation leave to Edwin Asebedo's leave balance.

26.     Edwin Asebedo asked Kansas State University to return leave to him because of his October 2010 complaint to the Office of Affirmative Action.

27.     In December 2010, Kansas State University returned to Edwin Asebedo's leave balance all of the leave he requested be returned as of that date.

28.     Edwin Asebedo did not appeal any of the findings of the Office of Affirmative Action on his October 2010 complaint.

29.     Mr. Asebedo has not sought or received treatment from a mental health professional.

**b**.     The parties have stipulated to the foundation for the following exhibits for purposes of summary judgment [and trial]:

1.    Personnel file of Edward Asebedo;

2.    Personnel file of Tom Fillipino;

3.    Personnel file of Loleta Sump;

4.    KSU's Office of the Affirmative Action's file on Mr. Asebedo's October 19, 2010 complaint.

5.    KSU's Office of the Affirmative Action's file on Mr. Asebedo's September 2011 complaint.

**3.    FACTUAL CONTENTIONS.**

   **a.    Contentions of Plaintiff(s).**

Ed is a 54-year-old Hispanic man who has been employed by Kansas State since January of 2007.   Most recently, he has worked in Central Mail Services ("CMS") and before that assignment held several other positions in university facilities.   Throughout his employment, Ed has received good evaluations and been a good employee.

Ed contends that during his employment, he has been subjected to improper discrimination by his direct supervisor, Tom Filippino, and other employees working in Central Mail Services.   On October 19, 2010, Ed filed a complaint alleging that Mr. Filippino and his coworkers regularly made racial slurs and derogatory remarks about Ed and other racial or ethnic groups.   For example, Tom Filippino said he would not allow minorities or international persons to work at CMS, that no niggers or chinks, or spics will work at CMS while (Filippino) is manager and that he will pay $5.00 to anyone to run over a chink.   The subsequent investigations by Kansas State supported Ed's complaint and findings were made in his favor on or about December 10, 2010 and against Mr. Filippino.

The harassing behavior from Mr. Filippino continued.  On or about August 3, 2011, Ed received a written reprimand for his actions in leaving campus following the threatening behavior by a K-State Police Officer.  Ed's supervisor, Ms. Sump, specifically characterized that notice as a written reprimand and said reprimand was placed in Ed's personnel file.  Ed again reported the discriminatory behaviors to the appropriate officials of Kansas State.  Following an investigation, on or about December 23, 2011, the Administrative Review Team of Kansas State found that Mr. Filippino had once again created a hostile work environment; specifically, that "Mr. Filippino continues to engage i[n] racially offensive behavior" and as such that Mr. Filippino violated the discrimination provision of university policy.  Despite this finding by the Administrative Review Team of Kansas State, and the previous finding against him, Mr. Filippino received minimal sanctions for his behavior, which had continued despite counselings. Mr. Filippino was provided a "decision-making day," (a one-day suspension with pay), a written warning, and a warning that he would be terminated if he engaged in similar behavior in the future.  Given his repeated and blatant behavior, said sanctions were wholly inadequate and allowed said behavior to continue.  Ed appealed this determination.  Following the determination and appeals, the outcome of Ed's initial administrative complaints through Kansas State was concluded on January 11, 2012 when Bruce Shubert, the Vice-President for Administration and Finance issued a final determination.

Ms. Sump contributed to the hostile work environment for Ed because she did not intervene to stop behavior that she was aware of.  For example, she was aware of racial stories and racial jokes from Tom Filippino and Ms. Sump did not reprimand him. Quite the contrary, it was Ed who received reprimands from Ms. Sump, including the reprimand of August 3, 2011.

7

Ed filed an initial timely charge of discrimination with the EEOC on February 21, 2012, Charge No. 563-2012-00724 and received a right to sue.

**b.      Contentions of Defendant(s).**   Defendant alleges it acted reasonably to prevent and correct racially offensive conduct in the workplace through its policies and investigated and imposed appropriate sanctions to remedy any offensive behavior made known to it by Mr. Asebedo. Defendant also contends that Mr. Asebedo's allegations were not sufficiently severe or pervasive to create a racially hostile work environment.

Kansas State University (hereafter KSU) denies Plaintiff's claims of discrimination and denies that Plaintiff is entitled to any relief. More specifically, Plaintiff did not bring his allegations to The Office of Affirmative Action until on or about October 19, 2010.  The Office thoroughly investigated Plaintiff's Claims and in December 2010 issued its Report and Findings. Although many of Plaintiff's allegations were not substantiated and no racial slurs were found to have been directed at Plaintiff, the Office found that Tom Filippino had violated University policy through a couple remarks he had admittedly made. The Office recommended certain actions be taken, including but not limited to, Respect Training. The Office also disciplined Tom Filippino and his Supervisor Loleta Sump for not performing up to University expectations in specific ways. Plaintiff did not appeal the December 2010 report or findings.

In July 2011 Plaintiff told Pam Foster at The Office of Affirmative Action that his coworkers were not making racial slurs but he was having a hard time letting go of events prior to October 2010.  Plaintiff did not complain again to the Office of Affirmative Action until September 2011.  Although most of the September 2011 complaints concerned Plaintiff's claim that various events were retaliation "for his October 2010 complaint", Plaintiff did claim that Tom Filippino told a racial joke, "the economy is so bad that my cat sold my dog to the Korean

restaurant next door". The Office of Affirmative Action investigated the Plaintiff's allegations in the September 2011 complaint and in a December 2011 report found them to be without merit except for the Korean restaurant joke which Mr. Filippino admitted. The University found that Mr. Filippino had violated University policy by repeating the joke, and was disciplined, a one-day decision-making leave which is the most serious action the University can take short of termination. Plaintiff appealed all of the findings in the December 2011 Report; his appeal was denied.

Plaintiff has not been subjected to a hostile work environment in Central Mail under Title VII standards.

Plaintiff did not receive a reprimand for leaving his mail truck with the keys in it without notifying supervision, rather, the August 3, 2011 document states it is a "written reminder". It is not discipline and does not affect the terms and conditions of his KSU employment.

Plaintiff has not exhausted administrative remedies. The February 21, 2012 Charge No 563-2012-00724 is not timely as to any events occurring prior to the statutory time limit. The charge is not timely as to "racial discrimination", as the Charge references only retaliation.

Finally, it is admitted that Plaintiff has no actual damages. As to the alleged pain and suffering, Plaintiff has not sought or received treatment. Although Plaintiff seeks the statutory maximum in damages, the discovery responses do not support his claims. Defendant denies subject matter jurisdiction, discrimination, or that Plaintiff is entitled to any relief. KSU acted reasonably and is entitled to judgment as a matter of law.


**4.      LEGAL CLAIMS AND DEFENSES.**

Plaintiff's claims of retaliation (Counts II and III of the Amended Complaint) were dismissed by the District Court and affirmed by the Tenth Circuit on appeal.

    **a.**    **Legal Claims of Plaintiff.**

Plaintiff asserts that he is entitled to recover under a hostile work environment theory of discrimination under Title VII based upon the conduct of which he complained in 2010 and 2011 complaints to the Office of Affirmative Action.

    **b.**    **Defenses of Defendant.**

Defendant asserts that it acted reasonably in response to Plaintiff's complaints and is entitled to judgment on that basis. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 676 (10th Cir. 1998).  Defendant also asserts it is entitled to the defense recognized in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998).

Defendant also denies that any of Plaintiff's complaints rise to the level sufficient to create a racially hostile work environment as they were not so severe or pervasive to alter the terms and conditions of employment, judged from a reasonable person standard.

**5.**    **DAMAGES AND NON-MONETARY RELIEF REQUESTED.**

Plaintiff seeks $300,000 in damages for embarrassment, humiliation and punitive damages, plus attorneys' fees and costs pursuant to 42 U.S.C. 1981a.

**6.**    **AMENDMENTS TO PLEADINGS.**

None.

**7.**    **DISCOVERY.**

Under the scheduling order and any amendments, all discovery was to have been completed by September 30, 2014. Discovery is complete.

8.    **MOTIONS.**

    a.    **Pending Motions.**

None.

    b.    **Additional Pretrial Motions.**

After the pretrial conference, the parties intend to file the following motions:

Defendant will file a motion for summary judgment on all of Plaintiff's claims in this action.

The dispositive-motion deadline, as established in the scheduling order and any amendments, is November 14, 2014.

The parties should follow the summary-judgment guidelines available on the court's website: http://www.ksd.uscourts.gov/summary-judgment/

Consistent with the scheduling order filed earlier in this case, the arguments and authorities section of briefs or memoranda must not exceed 30 pages, absent an order of the court.

    c.    **Motions Regarding Expert Testimony.**  Not applicable, i.e., the parties have stipulated that no expert testimony will be used in this case.

9.    **TRIAL.**

The trial docket setting, as established in the scheduling order and any amendments, is **July 14, 2015, at 9:00 a.m., in Wichita, Kansas,** before Hon. Eric F. Melgren, U.S. District Judge.  The parties expect the trial of this case to take three to four trial days.  This case will be tried by jury. The court will attempt to decide any timely filed dispositive motions approximately 60 days before trial. If no dispositive motions are timely filed, or if the case remains at issue after

timely dispositive motions have been decided, then the trial judge will convene another pretrial conference to discuss, among other things, the setting of deadlines for filing final witness and exhibit disclosures, exchanging and marking trial exhibits, designating deposition testimony for presentation at trial, motions in limine, proposed instructions in jury trials, and proposed findings of fact and conclusions of law in bench trials.

IT IS SO ORDERED.

Dated October 8,  2014, at Wichita, Kansas.


    s/ KENNETH G. GALE
Kenneth G. Gale
U. S. Magistrate Judge