**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

EDWIN ASEBEDO,

*Plaintiff,*

vs.

Case No. 12-CV-1373-EFM

KANSAS STATE UNIVERSITY,

*Defendant.*

**MEMORANDUM AND ORDER**

Plaintiff Edwin Asebedo brings a hostile work environment claim against Defendant Kansas State University ("KSU"). Currently before the Court is Defendant's Motion for Summary Judgment (Doc. 63). The Court finds that there is no genuine issue of material fact as to the existence of a hostile work environment. Furthermore, the Court finds that even if Plaintiff could demonstrate the existence of a hostile work environment, Defendant's response to the harassment was reasonably calculated to end the harassment. Thus, the Court grants Defendant's Motion for Summary Judgment for the reasons more fully stated below.

## I. Factual and Procedural Background[1]

Plaintiff Edwin Asebedo is Hispanic. Defendant KSU has employed Plaintiff since January of 2007, and Plaintiff has worked in Central Mail since February 2009. Plaintiff has

[1] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

received satisfactory or "meets expectations" on his job in Central Mail, and his personnel file contains no statutory discipline.

Defendant employs eighteen people in Central Mail. Tom Filippino was employed as an Administrative Officer in Central Mail from April 2010 through May 6, 2012. Mr. Filippino is no longer employed by Defendant. Mr. Filippino's supervisor was Loleta Sump. Ms. Sump, as Manager of Central Mail, had responsibilities over Central Mail. Ms. Sump's office is not located in Central Mail, but in another location.

Prior to July 1, 2014, all employees in Defendant's Central Mail Services, including supervisors, were subject to the State Civil Service System. State Civil Service employees may only be disciplined in accordance with State Civil Service statutes and regulations. As an administrative officer, Mr. Filippino lacked the power to hire, fire, or promote employees, or to significantly change responsibilities of employees. He also could not impose statutory discipline.

***Incidents***

On October 13, 2010, Plaintiff left a voice mail with Ms. Sump at 5:25 p.m. stating that he did not feel comfortable coming to work the next day and asked Ms. Sump to call him. Ms. Sump received the message the next day when she checked her voice mail from home. Ms. Sump and Plaintiff spoke on October 14, 2010, and Plaintiff told Ms. Sump that another co-worker, Russell Thompson, had remarked that Plaintiff's wife was gay. Plaintiff stated that Mr. Filippino had told a story about a biker bar which had led to Mr. Thompson's comment. Plaintiff also told Ms. Sump that Mr. Filippino had used racist language before but he had chosen to keep quiet about it. Plaintiff did not state that Mr. Filippino had directed racial slurs or comments toward him directly.

Ms. Sump followed up on Plaintiff's complaint and spoke to Mr. Filippino on October 14, 2010. Mr. Filippino admitted to telling a joke about an Indian, a black man, and a cowboy, and he immediately stated that he should not have done it. Mr. Filippino also admitted to telling some true stories from his life, which included the comment about the biker bar, but he denied using racial slurs. Ms. Sump told Mr. Filippino that if the language and behavior were occurring, she was disappointed and angry and that she had zero tolerance for this language and behavior.

After Ms. Sump spoke to her boss, she referred Plaintiff to the Office of Affirmative Action regarding his complaints. The Office of Affirmative Action is responsible for administering the Policy and Procedure for Discrimination and Harassment Complaints, which includes but is not limited to, receiving and investigating complaints, reporting the results of investigations, and making recommendations. Plaintiff first visited the Office of Affirmative Action on October 14, 2010, and met with Pamela Foster, Associate Director of the Office. On October 19, 2010, Plaintiff filed a comprehensive, written complaint with the Office of Affirmative Action stating that Mr. Filippino and certain workers made offensive comments to him.

The Office of Affirmative Action investigated Plaintiff's complaint. The administrative review team included Ms. Foster. The team interviewed Plaintiff and also obtained statements from and interviewed all of the individuals named as respondents in Plaintiff's complaint. The administrative review team informed Plaintiff and all of the respondents of the Policy and Procedure on Discrimination and Harassment, explained racial/ethnic harassment, the complaint procedure, the expectation of confidentiality, and the prohibition against retaliation. Plaintiff signed a document requesting that he be returned to the mailroom and agreed to report any acts that he considered to be retaliatory.

In December 2010, the Office of Affirmative Action issued its report with findings on Plaintiff's allegations. The report found that Mr. Filippino had violated university policy by telling true stories with racial elements and telling racial jokes.[2] The report did not substantiate Plaintiff's allegations about any co-workers using racial slurs or any racial slurs being directed toward Plaintiff. The report found that a hostile and offensive work environment existed for Plaintiff.

The Office of Affirmative Action made recommendations as to the actions to be taken based upon its investigation, which included a combination of sanctions and training. Specific recommendations and actions included: (1) issuing letters of reprimand to Mr. Filippino and Ms. Sump and ordering both to attend Respect Training and (2) ordering Russell Thompson and Barb Larson to attend Respect Training.

Plaintiff did not appeal the December 2010 report, its findings, or the proposed sanctions. Plaintiff asked Defendant to return leave to him because of his October 2010 complaint.[3] In December 2010, Defendant returned all of the leave Plaintiff had requested to be returned. In July 2011, Plaintiff told Ms. Foster in the Affirmative Action Office that he had not experienced any further offensive behavior in Central Mail, but he was having a hard time letting it go.

On July 20, 2011, a KSU police officer, Jim Younkes, swerved his police vehicle in Plaintiff's direction. Plaintiff believed it was a retaliatory action towards Plaintiff because he thought Officer Younkes was friends with Mr. Filippino. On July 22, 2011, Plaintiff, upon learning that a silent witness had reported to the police department that the Officer Younkes'

[2] The report states that one of Mr. Filippino's true stories involved the use of the "n-word."

[3] Plaintiff apparently used personal leave in October around the time of the October 13th incident.

incident appeared to be racially motivated, abandoned his work vehicle to retrieve his wife and remove her safely from campus.

On August 3, 2011, Plaintiff received a written reminder for the incident in which he left his university mail truck with the keys in it and left work without telling his supervisors. The written reminder is considered counseling and is not statutory discipline. The written reminder is not included in Plaintiff's official personnel file.

Plaintiff filed another complaint with the Office of Affirmative Action in September 2011. In this written complaint, Plaintiff reported the incident involving Officer Younkes. Plaintiff alleged that this incident was in retaliation for his prior complaint. Plaintiff also stated that Mr. Filippino continued to tell racist jokes, mentioning specifically a joke told by Mr. Fillipino that the economy was so bad that the cat sold the dog to the Korean restaurant next door.

The Office of Affirmative Action, with Ms. Foster again on the review team, investigated Plaintiff's complaint. In December 2011, the Office of Affirmative Action issued its report and findings. It found no evidence of retaliation,[4] but it did find that Mr. Filippino admitted to making the Korean joke. This report also found that Mr. Filippino continued to engage in racially offensive behavior and that Mr. Filippino continued to create a hostile work environment. The Office of Affirmative Action recommended that Mr. Filippino be placed on a one-day decision-making leave. The purpose of this leave is for the employee to consider whether he wants to continue working for Defendant and what positive changes the employee is prepared to make to

[4] The Office of Affirmative Action's report stated that Mr. Younkes and Mr. Filippino only knew each other in passing, and the swerving incident did not appear to be related to Plaintiff's previous complaint in any fashion.

avoid a recurrence of the issue. In 2011, this sanction was the most serious discipline Defendant imposed on a classified employee, short of termination of employment.

Plaintiff appealed the findings in the 2011 report, including the sanction on Mr. Filippino. A KSU official affirmed the findings and proposed discipline. Plaintiff did not make any complaint to the Office of Affirmative Action about any racial comment, joke, story, or slur by Mr. Filippino after the December 2011 report.

On February 12, 2012, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). He received a notice of a right to sue. Plaintiff filed suit in this Court on October 3, 2012. He filed an Amended Complaint on February 8, 2013.

Defendant then filed a Motion to Dismiss, or, in the alternative, a Motion for Judgment on the Pleadings. In granting Defendant's motion, this Court first found that Plaintiff failed to allege sufficient facts in his Complaint that Defendant's response to Plaintiff's allegations of discrimination was not reasonable. Thus, the Court dismissed Plaintiff's discrimination/hostile environment claim. Next, the Court found that Plaintiff's retaliation claim should be dismissed because Plaintiff failed to allege sufficient facts of a causal connection between his discrimination complaint and the alleged retaliatory actions.

Plaintiff appealed this decision to the Tenth Circuit Court of Appeals. On March 17, 2014, the Tenth Circuit affirmed in part and reversed in part this Court's order. It affirmed the dismissal of Plaintiff's retaliation claim. The circuit, however, reversed the dismissal of the

discrimination/hostile work environment claim.[5] It found that the reasonableness of an employer's response to an employee's complaint of discrimination arose in the context of an affirmative defense. Specifically, the circuit noted that "the reasonableness of an employer's response is the first step in establishing the employer's affirmative defense."[6] Finding that Plaintiff had no obligation to plead against affirmative defenses, and thus Plaintiff was not required to plead any facts relating to reasonableness, the circuit found that it was error to dismiss Plaintiff's discrimination claim on this basis.[7] Accordingly, the discrimination/hostile work environment claim was remanded back to this Court.

Defendant has now filed a Motion for Summary Judgment as to Plaintiff's remaining discrimination claim. This motion is currently before the Court.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[8] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[9] The

[5] The circuit noted that although Title VII does not specifically discuss a hostile work environment claim, such a claim was nevertheless a discrimination claim under Title VII. *Asebedo v. Kansas State Univ.*, 559 F. App'x 668, 670 (10th Cir. March 17, 2014).

[6] *Id*. at 671.

[7] Defendant also offered an alternative basis for dismissal by asserting that Plaintiff failed to exhaust his administrative remedies because he only checked the box for retaliation, and not discrimination, in his EEOC charge. The circuit found, however, that based on the record before it, the narrative in the EEOC charge stated that Defendant had violated Title VII because it had engaged in discrimination. Thus, the circuit determined that they could not "conclude that the charge was insufficient to put the EEOC and KSU on notice that Mr. Asebedo was claiming discrimination as well as retaliation." *Id*. at 672.

[8] Fed. R. Civ. P. 56(c).

[9] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

movant bears the initial burden of proof, and must show the lack of evidence on an essential element of the claim.[10] If the movant carries this initial burden, the nonmovant that bears the burden of persuasion at trial may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[11] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[12] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[13]

## III. Analysis

Defendant offers three theories as to why Plaintiff's discrimination claim fails as a matter of law. First, Defendant argues that the evidence demonstrates that its response to Plaintiff's complaint of discrimination, i.e., a hostile work environment was reasonable. Next, Defendant asserts that the Court lacks subject matter jurisdiction over Plaintiff's discrimination claim because Plaintiff's February 12, 2012, EEOC discrimination charge does not encompass the discriminatory events occurring in October 2010.[14] Finally, Defendant contends that Plaintiff does not present any evidence of conduct so severe or pervasive to meet the standard of a hostile

[10] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[11] *Id*. (citing Fed. R. Civ. P. 56(e)).

[12] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[13] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[14] Defendant states that 300 days prior to February 12, 2012, is April 18, 2011, and the discrimination claim occurred in October 2010. Defendant contends that the alleged events occurring within the 300-day timeframe from February 12, 2012, only encompass retaliation claims.

work environment claim. The Court will address Defendant's third and first arguments, in that order.

**A. Insufficient Evidence of Pervasive or Severe Conduct**

To survive a summary judgment motion on a hostile work environment claim, "a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[15] "Severity and pervasiveness are evaluated according to the totality of the circumstances."[16] Furthermore, the evidence must demonstrate that Plaintiff was targeted because of his race.[17] The Court must view the environment both objectively and subjectively.[18]

Plaintiff's evidence of severe or pervasive behavior based upon his race is lacking in the record. Plaintiff relies upon isolated incidents spanning a one-year period. These incidents include several race-based jokes. These racial jokes, however, were not directed toward Plaintiff's race/ethnicity and only occurred several times throughout the year. Plaintiff also states that racial comments were made throughout the year, but there is no evidence of the frequency or specifics. Plaintiff simply makes broad, general allegations. Vague and conclusory statements regarding the use of racial slurs with no content or context does not support an inference of

[15] *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1327 (10th Cir. 2004) (citation omitted).

[16] *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (citations omitted).

[17] *Sandoval*, 388 F.3d at 1327.

[18] *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012)

pervasive racial/ethnic harassment.[19] Even if the Court considers the July 2011 police officer swerving incident,[20] there is no evidence that this incident was racially-motivated. Accordingly, there are only sporadic incidents occurring over the course of one year. This evidence is insufficient to demonstrate severe or pervasive conduct altering the conditions of Plaintiff's employment.

Plaintiff primarily relies upon the Office of Affirmative Action's reports for support that a hostile environment existed because these reports state this proposition. These internal findings by Defendant, however, are not binding on this Court. There is no evidence that the Office of Affirmative Action considered case law or court decisions in determining that a hostile work environment existed. Indeed, the reports state that the framework for analyzing the situation was provided by Defendant's Policy and Procedure for Discrimination and Harassment Complaints.[21] Thus, the Office of Affirmative Action's decision relied upon its own internal standard for evaluating whether harassment, discrimination, or a hostile work environment existed.[22] This standard is not the Court's standard.

Racially offensive speech is inappropriate and has no place in the workplace. But the standard this Court must use in evaluating a hostile work environment claim requires Plaintiff to

[19] *See Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000). There are some general allegations that some individuals may have referred to Plaintiff as Mexican and that he could do the work, but there is no specificity to these allegations.

[20] In the parties' Pretrial Order, there is a stipulation that the retaliation claims have been dismissed from this action, and the dismissed claims of retaliation include the July 2011 police officer serving incident. *See* Pretrial Order, Doc. 60, p. 5, ¶¶ 21-22.

[21] *See* December 3, 2010 Administrative Review Team Report, Doc. 73-8, p. 3, ¶ C(1); December 23, 2011 Administrative Review Team Report, Doc. 73-9, p. 3, ¶ C(1)-(2).

[22] As Defendant points out, if the Office of Affirmative Action's report had stated that a hostile work environment did *not* exist, this finding also would not be binding on this Court.

show that the workplace was permeated with discriminatory intimidation sufficiently severe or pervasive that it altered Plaintiff's work environment and that it was based on Plaintiff's race. "A plaintiff does not make a sufficient showing of a pervasively hostile work environment by demonstrating a few isolated incidents of … sporadic … slurs …. Instead, there must be a steady barrage of opprobrious … comments."[23] The evidence in this case is simply insufficient to raise a genuine issue of material fact as to whether Plaintiff was subject to a discriminatory hostile work environment.

**B. Reasonableness**

Even if Plaintiff could establish a hostile work environment, Plaintiff's claim still fails. "To survive summary judgment under Title VII, the record must support an inference of a racially hostile work environment *and* a basis for employer liability."[24] "[E]mployers are not automatically liable under Title VII for the conduct of employees that creates a hostile work environment."[25] Employers, however, can be found liable under a negligence theory, which means that "the employer fails to remedy a hostile work environment it knew or should have known about."[26] Plaintiff proceeds under this negligence theory.

There are two steps to consider when assessing negligence and Defendant's response to the harassment.[27] The first step requires an inquiry into Defendant's actual or constructive notice of the discrimination.[28] Here, there is no question that Defendant had notice.

---

[23] *Morris*, 666 F.3d at 666 (citations and internal quotation marks omitted).

[24] *Ford*, 222 F.3d at 775.

[25] *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1139 (10th Cir. 2008).

[26] *Id.*

[27] *Id.* at 1147.

The second step requires the Court to consider the adequacy, or reasonableness, of Defendant's response to the racial hostility.[29] The test is "whether the [employer's] remedial and preventative action is reasonably calculated to end the harassment."[30] "If the employer's response ends the harassment by the employee in question, we presume that the remedial action was sufficient."[31] If the response is ineffective, the Court must examine "the timing of the employee's complaint, the speed of the employer's response, and the gravity of the punishment relative to the alleged harassment."[32] In addition, if there is repeat conduct, the Court should consider whether the employer "progressively stiffens its discipline."[33]

***1. The First Response***

Plaintiff's first complaint regarding harassment occurred in October 2010. On the day Ms. Sump received Plaintiff's voicemail about the complaint, she spoke to Mr. Filippino about the incident. Ms. Sump referred Plaintiff to the Office of Affirmative Action. Plaintiff visited the office on October 14, 2010, and met with the Associate Director of the Office. Five days later, on October 19, 2010, Plaintiff filed a written complaint. The office thoroughly investigated the complaint, interviewing all of the witnesesses and respondents. At the conclusion of the investigation, the Office of Affirmative Action recommended that several individuals, including Mr. Filippino, attend Respect Training. Mr. Filippino and Ms. Sump were also issued letters of

---

[28] *Id.*

[29] *Id.* at 1148.

[30] *Id.* (citation omitted).

[31] *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1310 (10th Cir. 2005) (citation omitted).

[32] *Id.*

[33] *Adler*, 144 F.3d at 676.

reprimand. "[Employer] responses that have been held reasonable have often included prompt investigation of the allegations, proactive solicitation of complaints, scheduling changes and transfers, oral or written warnings to refrain from harassing conduct, reprimands, and warnings that future misconduct could result in progressive discipline, including suspension and termination."[34] Here, Defendant employed several of these responses, and its response to Plaintiff's first complaint appears reasonably calculated to end the harassment. Indeed, for approximately seven months, the response appeared to work as Plaintiff stated in July 2011 that he had not experienced any further offensive behavior in Central Mail.

Plaintiff, however, argues that Defendant's first response was not reasonable. He first argues that there is no letter of reprimand in Mr. Filippino's personnel file. Plaintiff cites to one of Defendant's affidavits which stated that Mr. Filippino's personnel file contained no statutory discipline prior to December 2011.[35] Plaintiff, however, previously stipulated to the fact that Defendant took the action of issuing a letter of reprimand to Mr. Filippino in the Pretrial Order.[36] Thus, this fact is uncontroverted.

In addition, Plaintiff asserts that Mr. Filippino was a probationary employee at the filing of Plaintiff's complaint and therefore Defendant's later promotion of Mr. Filippino to permanent employee status demonstrates the unreasonableness of Defendant's response. Plaintiff, however, is mistaken as to Mr. Filippino's employment status because Defendant provides evidence that Mr. Filippino gained permanent or protected civil status on October 1, 2010, which is prior to

[34] *Id*. at 676.

[35] The parties do not explicitly discuss whether *statutory* discipline differs from a letter of reprimand, but it appears that these two items could be separate.

[36] *See* Pretrial Order, Doc. 60, p. 3, ¶ 10.

Plaintiff's October 2010 complaint. Accordingly, Plaintiff's argument on this point fails. With regard to the first complaint, Defendant's response was reasonably calculated to end the harassment.

*2. Defendant's Second Response*

Plaintiff filed a second written complaint in September 2011. "[A]n employer is not liable, although a perpetrator persists, so long as each response was reasonable."[37] The Office of Affirmative Action again promptly investigated the matter. At the conclusion of the second investigation, based on the substantiated claim of Mr. Filippino telling a racial joke,[38] the Office of Affirmative Action determined that Mr. Filippino had continued to create a hostile work environment and placed Mr. Filippino on a one-day decision-making leave. The purpose of this leave was for Mr. Filippino to consider whether he wanted to continue working for Defendant and what positive changes he could make to avoid the recurrence of the issue. At the time, this sanction was the most serious discipline Defendant imposed on a classified employee, short of termination of employment. As noted by the Tenth Circuit in *Adler*, "an employer is not required to terminate a perpetrator except where termination is the only response that would be reasonably calculated to [] end the harassment."[39] Here, Defendant's response was prompt and the progressive discipline seems proportionate to the gravity of the situation. Although Plaintiff suggests that Defendant could have imposed a longer suspension or demoted Mr. Filippino, Plaintiff does not controvert the fact that Defendant's one-day suspension was the most serious

[37] *Adler*, 144 F.3d at 676. The Court also notes that a regression of behavior over time does not necessarily mean that the employer's initial response was unreasonable. *Id.* at 677.

[38] The Office of Affirmative Action did not find validity in Plaintiff's other claims of retaliation and thus did not impose discipline for those alleged offenses.

[39] *Id.* at 676. The court in *Adler* also noted that an employer is not an insurer against any possible future harassment. *Id.* at 679.

sanction available, short of termination, available to Defendant at that time. In short, Defendant's response appears reasonably calculated to end the harassment. Plaintiff did not make any further complaints to the Office of Affirmative Action about any racial comment, joke, story, or slur by Mr. Filippino after the December 2011 report. The Court concludes that there is no genuine issue of material fact as to the reasonableness of Defendant's response to Plaintiff's second complaint of discrimination/hostile work environment.

In sum, the Court finds that a genuine issue of material fact does not exist as to whether a hostile work environment existed. Even if the Court would find that a hostile work environment existed, Defendant's responses were reasonably calculated to end the harassment. Thus, the Court concludes that Defendant is entitled to summary judgment.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 63) is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 5th day of August, 2015.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE